UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

ROBERT GONZALES,

    Petitioner,

    v.

ROSEANNE CAMPBELL, Warden,

    Respondent.
_____/

No. C 05-0732 PJH (PR)

**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS**

This is a habeas corpus case filed pro se by a state prisoner pursuant to 28 U.S.C. § 2254. The court ordered respondent to show cause why the writ should not be granted. Respondent has filed an answer, along with a memorandum of points and authorities in support of it, and has lodged exhibits with the court. Petitioner has filed a traverse. The matter is submitted.

## BACKGROUND

Petitioner was convicted by a jury of two counts of robbery and two counts of impersonating a public officer. Petitioner was sentenced to state prison for seven years. The California Court of Appeal affirmed the conviction and sentence and the California Supreme Court denied petitioner's application for review.

As grounds for habeas relief, petitioner asserts that: (1) there was insufficient evidence to support his conviction on the impersonation counts; (2) there was insufficient evidence that force or fear was used for one of the robbery counts; and (3) his due process rights were violated because the jury instructions omitted an element of the impersonation offense.

///

Petitioner does not dispute the following facts, which are taken from the California Court of Appeal opinion:

### A. Counts 1 and 3

Shortly after midnight on February 16, 1997, Melvin Oldeen and his wife were driving home from seeing a movie. He noticed a pickup truck on the side of the road. The truck had hit a light pole and the driver was attempting to dislodge it. Oldeen parked his car and approached the pickup truck, intending to render assistance. He recommended that the driver get out of the vehicle. Meanwhile, Oldeen's wife went to a nearby house to call 911.

A few minutes later, a light blue van drove upon the scene. Two men got out of the van: defendant (the driver) and a second person (the passenger). Both men approached, and one of them said, "May we see some ID, sir." Oldeen initially testified that defendant spoke these words, but he later changed his mind and stated, "It was the passenger." Oldeen was "astounded" at how politely the man asked for identification, and he "assumed" the two men were off-duty police officers. The man asked for identification three times before the pickup truck driver complied. While waiting for compliance with the request, defendant spoke to his passenger, saying "something to the effect" of "Get ready, man."

When the pickup truck driver took out his wallet to get his identification, the passenger grabbed the wallet. The passenger struck the pickup driver, sending him to the ground. The passenger also struck Oldeen.

At some point, police arrived. Oldeen described the perpetrators. A few days later, Oldeen viewed a photographic lineup. He selected defendant's photograph. Oldeen also identified defendant at trial.

### B. Counts 2 and 4

About 10:00 p.m. on February 24, 1997, Sandeep Kalkat was attempting to tow his car, which had broken down. His friend Gagan Singh was helping him. They were performing the towing operation at night because they believed it was not legal.

A black Nissan sports car approached and the two men got out: defendant and a second person. The men claimed to be "undercover cop[s]" and told Kalkat that what he was doing was illegal. Kalkat was "scared" at the time. He believed the men were police officers.

Defendant patsearched Kalkat and told him, "Let me see your ID." Defendant also asked for Kalkat's wallet. Kalkat complied. Defendant looked through the wallet and then gave it back. When defendant asked for the wallet, Kalkat began to suspect that defendant was not a police officer. Kalkat thought about asking defendant for a badge, but opted not to because he was "scared" that defendant could physically harm him; he also feared defendant could have a gun. After defendant and the other man left, Kalkat checked his wallet and discovered two credit cards were missing.

2

Meanwhile, the second man spoke with Singh, asking to see his identification and wallet. Singh gave the man his wallet. Singh suspected that the two men were not police officers, but he was afraid of them "because of their size" and because he feared they might be armed. The man took Singh's wallet back to the sports car, but later returned it.

Kalkat and Singh described the men to the police. Singh told the police the license plate number of the black Nissan. The registered owner was Alfredo Gonzales – defendant's father, who allowed defendant to drive his car. On the night of the incident, the police located the black Nissan at the residence of Alicia Gonzales – defendant's sister, who allowed defendant to stay with her sometimes.

The police subsequently showed Kalkat a photographic lineup. Kalkat selected defendant's photograph. Kalkat also identified defendant at trial. Ans., Ex. B at 2-3.[1]

## STANDARD OF REVIEW

A district court may not grant a petition challenging a state conviction or sentence on the basis of a claim that was reviewed on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). The first prong applies both to questions of law and to mixed questions of law and fact, *Williams (Terry) v. Taylor*, 529 U.S. 362, 407-409 (2001), while the second prong applies to decisions based on factual determinations. *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

A state court decision is "contrary to" Supreme Court authority, that is, falls under the first clause of § 2254(d)(1), only if "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams (Terry)*, 529 U.S. at 412-413. A state court decision is an "unreasonable application of Supreme Court authority, falling under the second clause of § 2254(d)(1), if it

---

[1] References to exhibits are to those attached to respondent's answer, unless otherwise indicated.

3

correctly identifies the governing legal principle from the Supreme Court's decisions but "unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. The federal court on habeas review may not issue the writ "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411. Rather, the application must be "objectively unreasonable" to support granting the writ. *Id.* at 409.

Under 28 U.S.C. § 2254(d)(2), a state court decision "based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." *Miller-El*, 537 U.S. at 340; *see also Torres v. Prunty*, 223 F.3d 1103, 1107 (9th Cir. 2000).

When there is no reasoned opinion from the highest state court to consider the petitioner's claims, the court looks to the last reasoned opinion, here the opinion of the California Court of Appeal affirming his conviction and sentence. *See Ylst v. Nunnemaker*, 501 U.S. 797, 801-806 (1991); *Shackleford v. Hubbard*, 234 F.3d 1072, 1079, n. 2 (9th Cir. 2000).

**DISCUSSION**

*1.   Insufficient Evidence*

Two of petitioner's claims are for insufficient evidence. The Due Process Clause "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime for which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970). A state prisoner who alleges that the evidence in support of his state conviction cannot be fairly characterized as sufficient to have led a rational trier of fact to find guilt beyond a reasonable doubt therefore states a constitutional claim, which if proven, entitles him to federal habeas relief. *Jackson v. Virginia*, 443 U.S. 307, 321, 324 (1979). A federal court reviewing collaterally a state court conviction does not determine whether the evidence established guilt beyond a reasonable doubt. *Payne v. Borg*, 982 F.2d 335, 338 (9th Cir. 1992), *cert denied*, 510 U.S. 843 (1993). The federal court determines only whether, "after viewing the evidence in the light most favorable to the prosecution, any

4

rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.*; (quoting *Jackson*, 443 U.S. at 319). Only if no rational trier of fact could have found proof of guilt beyond a reasonable doubt, may the writ be granted. *Jackson*, 443 U.S. at 324.

On habeas review, a federal court evaluating the evidence under *In re Winship* and *Jackson v. Virginia* should take into consideration all of the evidence presented at trial. *LaMere v. Slaughter*, 458 F.3d 878, 882 (9th Cir. 2006). Circumstantial evidence and inferences drawn from that evidence may be sufficient to sustain a conviction. *Walters v. Maass*, 45 F.3d 1355, 1358 (9th Cir. 1995). If confronted by a record that supports conflicting inferences, a federal habeas court "must presume – even if it does not affirmatively appear on the record – that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *Jackson*, 443 U.S. at 326. A jury's credibility determinations are therefore entitled to near-total deference. *Bruce v. Terhune*, 376 F.3d 950, 957 (9th Cir. 2004).

    *A. Impersonating an Officer*

Petitioner contends that there is insufficient evidence to support his conviction on the impersonation counts. Petitioner was accused in Counts 3 and 4 of impersonating an officer, in violation of California Penal Code section 146a(b).[2] Petitioner argues that there was no evidence presented at trial that he represented himself to be any type of "state department" official. Petitioner argues: "Section 146a requires proof that impersonation was made of a state officer . . . The plain language of the statute established that the impersonation must be of a state officer . . . Any doubts as to the meaning of the statute must be resolved in appellant's favor." Pet. at 8. In his traverse, petitioner claims that the

---

[2] Section 146a, subdivision (b) provides: "Any person who falsely represents himself or herself to be a public officer, investigator, or inspector in any state department and who, in that assumed character, does any of the following shall be punished by imprisonment in a county jail not exceeding one year, by a fine not exceeding two thousand five hundred dollars ($2,500), or by both that fine and imprisonment, or by imprisonment in the state prison: [¶] (1) Arrests, detains, or threatens to arrest or detain any person. [¶] (2) Otherwise intimidates any person. [¶] (3) Searches any person, building, or other property of any person. [¶] (4) Obtains money, property, or other things of value."

5

California Court of Appeal erroneously interpreted section 146a. Pet'r Traverse ("PT") at 3.

The Court of Appeal determined that state law did not require the prosecutor to prove that petitioner falsely impersonated a *state* public officer, but only a public officer. *People v. Gonzales*, 114 Cal. App.4th 560, 569 (2003) (ruling that the term "public officer" as used in Cal. Penal Code § 146a(b) was not modified by the phrase "of any state department"). A state court's interpretation of state law binds a federal court sitting in habeas corpus. *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005); *Hicks v. Feiock*, 485 U.S. 624, 629 (1988). Even a determination of state law made by an intermediate appellate court must be followed and may not be "disregarded by a federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise." *Hicks*, 485 U.S. at 630 n.3 (quoting *West v. American Telephone & Telegraph Co.*, 311 U.S. 223, 237-238 (1940)). As the appellate court's interpretation is binding on this court and as petitioner has not presented other persuasive data that the California Supreme Court would decide the issue otherwise, the court finds petitioner's claim to be without merit.

Petitioner also contends that there was insufficient evidence to show that he falsely represented himself to be a public officer on February 16. Petitioner alleges that his passenger asked Melvin Oldeen ("Oldeen") for ID, and Oldeen "assumed" that petitioner and his passenger were undercover officers. PT at 16. Petitioner argues that Oldeen's assumption was not based on any representations he made. *Id.* Petitioner distinguishes the February 16 incident from that on February 24, because on the latter date, petitioner said that he was an "undercover cop". Petitioner contends that neither "he nor his passenger made any representations about their identities during the incident of February 16, 1997." PT at 17.

Shortly after midnight on February 16, 1997, Oldeen was driving and saw a pickup truck that had hit a light pole. Ex. E at 97. Oldeen got out of his car to offer assistance. *Id.* A few minutes later, a van drove up and two men got out of the car. *Id.* at 99. Petitioner and his friend approached Oldeen, and said, "May we see some ID, sir." *Id.* at 102.

Oldeen testified that because they asked so politely, he "assumed" the two men were off-duty police officers. *Id.* A reasonable jury could find that non-law enforcement people do not generally approach other non-law enforcement people late at night at the scene of what appeared to be an auto accident, and ask them for identification. Thus a reasonable jury could under these circumstances find that petitioner behaved and spoke in a manner intended to falsely convey the impression that he was an undercover officer. And as noted by the Court of Appeal, the jury was also entitled to consider that one week later, petitioner committed a similar offense under similar circumstances.

There was, therefore, sufficient evidence from which a rational jury could have concluded beyond a reasonable doubt that petitioner did impersonate an officer on February 16. Thus, the state courts' denial of the claim was not contrary to, or an unreasonable application of, clearly established Supreme Court authority, nor was it objectively unreasonable in light of the totality of the evidence presented.

### B. Robbery

Petitioner contends that there was insufficient evidence to show that he committed robbery on February 24, 1997. Petitioner claims that he did not take the victim's personal property by "force or fear." Pet. at 8. Petitioner alleges that "[h]e used no force; he made no threats, express or implied. He did not even suggest that he had any weapons." PT at 19.

Robbery is the felonious taking of personal property of another, "against his will, accomplished by means of force or fear." Cal. Penal Code § 211. The element of fear in robbery may be satisfied by a showing of "fear of an immediate and unlawful injury to the person or property of anyone in the company of the person robbed at the time of the robbery." Cal. Penal Code § 212.

As previously noted, at about midnight on February 24, 1997, Sandeep Kalkat ("Kalkat") and Gagan Singh ("Singh") were trying to tow Kalkat's broken down car. Ex. E at 152. A dark-colored car approached the two men, and petitioner and his co-participant got out of the car. *Id.* at 154. The men identified themselves as "undercover cops" and told

Kalkat and Singh that what they were doing was illegal. *Id.* at 156.  Petitioner patsearched Kalkat and asked for his identification and wallet.  *Id.* at 160.  Kalkat took out his wallet, petitioner took it, turned his back to Kalkat, then gave him back the wallet.  *Id.* at 161.  After petitioner and his friend left, Kalkat realized two of his credit cards were missing from his wallet.  *Id.* at 174.

Kalkat testified that when he began to suspect that petitioner was not a police officer, he did not ask to see a badge because he was "scared" that petitioner could physically harm him, and he feared that petitioner had a gun.  *Id.* at 174.  Kalkat also testified that he was much smaller than petitioner and he was scared of petitioner's size.  *Id.* at 172.  Singh testified that he was afraid to complain because the men were big and might have been armed.  *Id.* at 208-210.  In sum, the two victims clearly expressed fear of petitioner.  And given the circumstances, their fear was not unreasonable.  This evidence was sufficient to support a finding that petitioner took Kalkat's property by means of fear of unlawful injury.

Accordingly, the state courts' decision was not contrary to, or an unreasonable application of federal law, nor was the court's factual determinations objectively unreasonable in light of the totality of the evidence presented.

*2.    Jury Instruction*

Petitioner contends that his due process rights were violated because the jury instructions omitted an element of the impersonation offense.  Again, petitioner argues that section 146a requires proof that he falsely impersonated an official from a state department.  Pet. at 8.  Petitioner alleges that the instruction "lessened the prosecution's burden of proof", because the instruction only required the jury to find that petitioner falsely represented himself as a "public officer."  PT at 13.  Petitioner contends that during the February 24 incident "he said only that he was an 'undercover cop'" but there was no evidence from which the jury could have inferred that he was impersonating a "state" undercover officer.  *Id.* at 15.

1   The trial court instructed the jury on the elements of section 146a.[3]  The jury was
instructed that the term public officer "includes any chief of police employed in that capacity
of a city, or any police officer employed in that capacity and appointed by the chief of police
or the chief executive of the agency or of the city." (CALJIC No. 126).  The necessary
basis for petitioner's argument is that section 146a means something that it does not.  As
stated above, the California Court of Appeal ruled that the prosecution did not have to
prove that petitioner falsely represented himself to be a state department official.
*Gonzales*, 114 Cal. App.4th at 569.  Thus, there was no instructional error and petitioner's
claim is meritless.  Because there was no constitutional violation, the state courts' denial of
petitioner's claim is not contrary to, or an unreasonable application of, clearly established
Supreme Court authority.

## CONCLUSION

For the foregoing reasons, the petition for a writ of habeas corpus is **DENIED**.  The clerk shall close the file.

**IT IS SO ORDERED.**

Dated:  July 31, 2007.

PHYLLIS J. HAMILTON
United States District Judge

---

[3]The jury was instructed: "In order to prove this crime, each of the following elements must be proved beyond a reasonable doubt: Number one, a person falsely represented himself as a public officer with the specific intent of inducing another person to believe that he was a public officer; number two, in that assumed character, the person did any of the following: Arrested, detained, or threatened to arrest or detain a person, or otherwise intimidated any person, or obtained money, property, or any other thing of value with the specific intent of permanently depriving any person of his property permanently.

9